DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

HAROLD ALEXANDER THOMAS, III; and )
HAMILTON BRYAN,                    )
                                   )
            Plaintiffs,            )
                                   )
            v.                     )    Civil No. 2013-06
                                   )
JOSEPH BONANNO; WEST ESSEX MANAGEMENT )
CORPORATION; TURN AROUND ENTERPRISES, )
LLC; LIEUTENANT GOVERNOR OF THE VIRGIN )
ISLANDS, GREGORY R. FRANCIS, in his )
official capacity,                 )
                                   )
            Defendants.            )
_____ )

ATTORNEYS:

Harold Alexander Thomas, III
     Pro se

Hamilton Bryan
     Pro se

Jennifer Jones, Esq.
Law Offices of Jennifer Jones
St. Thomas, VI
     For the defendants Joseph Bonanno; West Essex Management
     Corporation; and Turn Around Enterprises, LLC

Vincent F. Frazer, Attorney General
Tamika Archer, AAG
Virgin Islands Department of Justice
St. Thomas, VI
     For the defendant Lieutenant Governor of the Virgin Islands
     Gregory R. Francis

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court are the several motions of the defendants
to dismiss this matter.

*Thomas v. Beretta*
Civil No. 2013-06
Memorandum Opinion
Page 2

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of the tax sale of certain real property known as "No. 5 Estate Sans Souci and Guinea Gut, No. 9 & 10 Cruz Bay Quarter, St. John, United States Virgin Islands." (the "Property").

The Property was originally owned by Julius A. Thomas and Harold W. Thomas. Upon their death, it became the subject of a probate action in the Superior Court of the Virgin Islands (the "Superior Court"), in the case captioned *Thomas ex rel. Thomas v. Thomas ex rel. Thomas*, Civil No. 874/86. On October 22, 1988, the Superior Court granted undivided, fractional interests in the Property to the decedents' heirs, in the manner detailed below:

| Owner | Ownership Interest |
|---|---|
| Rudolph Gleston Thomas | 2/31 |
| Isma Lorensina Thomas | 2/31 |
| Harold Alexander Thomas | 2/31 |
| Woodrow Lloyd Thomas | 2/31 |
| Leon Harold Thomas | 2/31 |
| Theodore Alvin Thomas | 2/31 |
| Olive Hyacinth Thomas | 2/31 |
| Effie Aguita Thomas | 2/31 |
| Terrence Therbaites Thomas | 2/31 |
| Sam Alfred Hamilton Thomas | 2/31 |
| Estate of Clyde Alexander Thomas | 2/31 |
| Elba Jeanine Zessnett Thomas | 2/31 |
| Dorothy Patricia Thomas | 2/31 |
| Conrad Alberto Thomas, Jr. | 1/31 |
| Lucille Ann Thomas | 2/31 |
| Estate of Thyra Thomas Beretta | 2/31 |

Harold Alexander Thomas is the father of Harold Alexander Thomas, III ("Thomas"), the plaintiff in this case. Upon his father's death, Thomas inherited an undivided 2/93 interest in the Property.[1] Thomas also acquired Rudolph Gleston Thomas's undivided 2/31 interest in the Property. (Compl. ¶ 1.)

The plaintiff Hamilton Bryan ("Bryan") was conveyed an undivided 2/93 interest in the Property from Phyllis Rosalind Thomas, who in turn inherited this interest from Clyde Alexander Thomas.

On January 25, 2012, the defendant Gregory R. Francis, the Lieutenant Governor of the Virgin Islands (the "Lieutenant Governor") sold the Property at a tax sale for delinquent taxes.[2] The purchaser of the Property was the defendant Joseph Bonanno ("Bonanno"). Bonanno allegedly assigned his interest in the Property to the defendants West Essex Management Corporation ("West Essex") and Turn Around Enterprises, LLC ("Turn Around").

Thomas and Bryan initiated this action on January 23, 2013. Count One of the Complaint seeks to set aside the January 25, 2012, tax sale. Count Two of the Complaint asserts a claim for slander of title.

---

[1] Thomas alleges that he had several siblings, which is why he received only a fraction of his father's fractional interest. Thomas does not identify his siblings or indicate whether they still have any ownership interest in the Property.

[2] According to the Complaint, property taxes had not been paid on the Property from 1991 to 2008.

On January 25, 2013, Thomas and Bryan attempted to effect service on the defendant Gregory R. Francis, Lieutenant Governor of the Virgin Islands (the "Lieutenant Governor") by delivering a copy of the summons and the complaint to a secretary in his office.

On January 28, 2013, Thomas and Bryan attempted to effect service on the defendant Joseph Bonanno ("Bonanno") by mailing a copy of the summons and the complaint to a United States Post Office Box in St. John. Thomas and Bryan also mailed a copy of the summons and the complaint to Bonanno at his residence in St. Thomas. On January 29, 2013, a copy of the summons and complaint was left at the door of Bonanno's residence. The process server averred that "two groundskeepers" witnessed him leaving the process at Bonanno's doorstep. (ECF Nos. 14, 15, 17.)

On February 4, 2013, Thomas and Bryan attempted to effect service on the defendants West Essex Management Corporation ("West Essex") and Turn Around Enterprises, LLC ("Turn Around") by leaving a copy of the summons and the complaint "on the business door" of the companies' shared office in New Jersey. (ECF Nos. 19, 21, Returns of Service on West Essex and Turn Around.)

Thereafter, on March 1, 2013, Thomas and Bryan effected personal service of a copy of the summons and complaint on Roxann McMahon, the registered agent for the receipt of service

of process for Turn Around. (ECF No. 46, Return of Service on Turn Around.)

On March 4, 2013, Thomas and Bryan attempted to effect service on West Essex by mailing a copy of the summons and complaint to Harry Vasquez and Anthony T. Colasanti, the registered agents of West Essex. (ECF Nos. 44, 45, Returns of Service on West Essex.)

On May 15, 2013, the Clerk of the Court entered default against the Lieutenant Governor.

Bonanno, West Essex, and Turn Around now move to dismiss this matter for want of sufficient service of process, or, in the alternative, for failure to join indispensable parties and for failing to state a claim for which relief may be granted. The Lieutenant Governor moves to vacate the entry of default and joins in his codefendants motions to dismiss.

## II. <u>DISCUSSION</u>

### A. <u>Service of Process</u>

A motion under Federal Rule of Civil Procedure 12(b)(5) is the appropriate means for challenging the manner or sufficiency of service of process. *Chilicky v. Schweiker*, 796 F.2d 1131, 1136 (9th Cir. 1986), *rev'd on other grounds*, 487 U.S. 412 (1988); *Dimensional Commc'ns, Inc. v. OZ Optics Ltd.*, 218 F. Supp. 2d 653, 655 (D.N.J. 2002). The plaintiff bears the burden of establishing that service of process has been accomplished in

a manner that complies with Federal Rule of Civil Procedure 4.

*Montgomery, Zukerman, Davis, Inc. v. Diepenbrock*, 698 F. Supp. 1453, 1459 (S.D. Ind. 1988); *see also Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).

**B.   Failure to Join Indispensable Party**

Federal Rule of Civil Procedure 12(b)(7) permits the dismissal of a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Federal Rule of Civil Procedure 19(a)(1) ("Rule 19(a)(1)") requires the joinder of certain parties under specific, enumerated circumstances. *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). In pertinent part, Rule 19(a)(1) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > (i) as a practical matter impair or impede the person's ability to protect the interest; or

> > (ii) leave an existing party
> > subject to a substantial risk
> > of incurring double,
> > multiple, or otherwise
> > inconsistent obligations
> > because of the interest.

Fed. R. Civ. P. 19(a)(1). The party requesting joinder of a necessary party need only establish that one of the grounds under Rule 19(a)(1) exists. *Whyham v. Piper Aircraft Corp.*, 96 F.R.D. 557, 560 (M.D. Pa. 1982); *see also Koppers Co. v. Aetna Cas. & Sur. Co.*, 158 F.3d 170, 175 (3d Cir. 1998) ("As Rule 19(a) is stated in the disjunctive, if either subsection is satisfied, the absent party is a necessary party that should be joined if possible.") In the event that a plaintiff has not originally joined a necessary party, ordinarily, the proper remedy is to order joinder. Fed. R. Civ. P. 19(a)(2). If, however, a necessary party cannot be feasibly joined, a district court may, in its discretion, order that the case be dismissed. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1053-54 (3d Cir. 1988).

## C.  **Failure to State a Claim for Which Relief May be Granted**

When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint "in the light most favorable to the plaintiff." *In*

*re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir.
2010). The Court must accept as true all of the factual
allegations contained in the complaint and draw all reasonable
inferences in favor of the non-moving party. *Alston v. Parker*,
363 F.3d 229, 233 (3d Cir. 2004).

A complaint may be dismissed for "failure to state a claim
upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).
"[A] plaintiff's obligation to provide the grounds of his
entitlement to relief requires more than labels and conclusions,
and a formulaic recitation of the elements of a cause of action
will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555
(2007).

The Supreme Court in *Bell Atlantic v. Twombly*, 550 U.S. 544
(2007), set forth the "plausibility" standard for overcoming a
motion to dismiss and refined this approach in *Ashcroft v.
Iqbal*, 556 U.S. 662 (2009). The plausibility standard requires
the complaint to allege "enough facts to state a claim to relief
that is plausible on its face." *Twombly*, 550 U.S. at 570. A
complaint satisfies the plausibility standard when the factual
pleadings "allow[] the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged." *Iqbal*,
556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard
requires showing "more than a sheer possibility that a defendant
has acted unlawfully." *Id.* A complaint which pleads facts

" 'merely consistent with' a defendant's liability, . . . 'stops

short of the line between possibility and plausibility of

"entitlement of relief." ' " *Id.* (citing *Twombly*, 550 U.S. at

557).

To determine the sufficiency of a complaint under the

plausibility standard, the Court must take the following three

steps[3]:

> First, the court must "tak[e] note of the
> elements a plaintiff must plead to state a
> claim." Second, the court should identify
> allegations that, "because they are no more
> than conclusions, are not entitled to the
> assumption of truth." Finally, "where there
> are well-pleaded factual allegations, a
> court should assume their veracity and then
> determine whether they plausibly give rise
> to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)

(quoting *Iqbal*, 556 U.S. at 674, 679).

### III. <u>ANALYSIS</u>

**A.** <u>**Service of Process**</u>

**1.  Service on Bonanno**

Bonanno, contends that this action should be dismissed as

to him because Thomas and Bryan have failed to effect timely and

sufficient service of process.

---

[3] *Iqbal* describes the process as a "two-pronged approach" but the
Supreme Court took note of the elements a plaintiff must plead to state a
claim before proceeding to its two-step approach. Accordingly, the Third
Circuit has deemed the process a three step approach. *See Santiago*, 629 F.3d
at 130.

*Thomas v. Bornovin*
Civil No. 2013-06
Memorandum Opinion
Page 10

Federal Rule of Civil Procedure 4(e) ("Rule 4(e)") permits service to be made upon an individual in one of four ways:

> (1) [by] following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) [by] doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Virgin Islands law adopts the Federal Rules with respect to service of process. In addition, Virgin Islands law permits service to be made by publication in certain exceptional cases. V.I. CODE ANN. tit. 5, § 112(a). To effect service by publication, a plaintiff must first obtain a court's approval. *Id.* To do so, a plaintiff must first show, by affidavit, that service could not be effected in accordance with Rule 4(e)(2) and the defendant could not be located within the Virgin Islands. *Id.* Even then, authorization to serve by publication will only issue

in six statutorily enumerated circumstances. *Id.* at § 112(a)(1)-
(6).

The record reflects that Thomas and Bryan mailed a copy of
the summons and the complaint to a Post Office Box in St. John
allegedly maintained by Bonanno and to Bonanno's alleged
residence. A copy of the summons and complaint was also left at
the door of Bonanno's alleged residence. Significantly, however,
there is nothing in the record to suggest that the process left
at Bonanno's residence was left with "someone of suitable age
and discretion who resides there . . . ." Fed. R. Civ. P.
4(e)(2)(C). Instead, the process server averred that "two
groundskeepers . . . witnessed" him leaving the process at
Bonanno's residence. (ECF No. 17.)

Thomas and Bryan's attempts at service do not comport with
the plain terms of Rule 4(e)(2) or Virgin Islands law. Although
it is clear that Bonanno has since become apprised of this
action, "actual notice is not a substitute for proper service."
*In re City of Phila. Litig.*, 123 F.R.D. 515, 519 (E.D. Pa. 1988)
(citing *Davis-Wilson v. Hilton Hotels Corp.*, 106 F.R.D. 505, 508
(E.D. La. 1985) ("The mere fact that a defendant received actual
notice is not sufficient if there has not been compliance with
the plain requirements of the Federal Rules of Civil Procedure,
Rule 4."); *Bryant v. Rohr Indus., Inc.*, 116 F.R.D. 530, 533
(W.D. Wash. 1987) ("[I]t is clear that the defendant . . . is

aware of the plaintiff's lawsuit. Nevertheless, ignorance of the

law is no excuse, and plaintiff has not shown good cause for his

failure to perfect service."); *See also Stranahan Gear v. N.L.

Indus., Inc.*, 800 F.2d 53, 56–57 (3d Cir. 1987) (" 'When there

is actual notice, every technical violation of the rule or

failure of strict compliance may not invalidate the service of

process. But the rules are there to be followed and plain

requirements for the means of effecting service of process may

not be ignored.' " (quoting *Amrco, Inc. v. Penrod-Stauffer Bldg.

Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984))).

　　Having found the attempt at service on Bonanno

insufficient, the Court must next consider whether Thomas and

Bryan ought to be given an opportunity to cure their deficient

service. Federal Rule of Civil Procedure 4(m) ("Rule 4(m)")

provides:

> (m) Time Limit for Service. If a defendant
> is not served within 120 days after the
> complaint is filed, the court—on motion or
> on its own after notice to the plaintiff—
> must dismiss the action without prejudice
> against that defendant or order that service
> be made within a specified time. But if the
> plaintiff shows good cause for the failure,
> the court must extend the time for service
> for an appropriate period . . . .

Fed. R. Civ. P. 4(m). At present, it is some 169 days since the

initiation of this action. Thus, the time-period for effecting

service under Rule 4(m) has elapsed.

Yet, the Third Circuit has read Rule 4(m) "to require a court to extend time if good cause is shown and to allow a court discretion to dismiss or extend time absent a showing of good cause." *Petrucelli v. Bohringer*, 46 F.3d 1298, 1305 (3d Cir. 1995). In exercising its discretion to extend a service deadline, absent good cause, a court must consider four factors: "(1) the reasonableness of the plaintiff's efforts to effect service; (2) prejudice to the defendant because of untimely service; (3) whether the plaintiff has moved for an enlargement of time; and (4) whether the statute of limitations will bar the plaintiff's claims if the action is dismissed." *Mathies v. Silver*, 450 F. App'x 219, 222 (3d Cir. 2011).

In *Mathies v. Silver*, 450 Fed. App'x 219 (3d Cir. 2011), Stephen Mathies ("Mathies"), an inmate, filed a *Bivens* action against a prison physician, Seth Silver ("Dr. Silver"). Mathies failed to serve Silver for more than six years and never properly served the United States. *Id.* at 220. On appeal, the Third Circuit affirmed the district court's dismissal of the action for want of timely service after "consider[ing] several factors, including whether the statute of limitations would foreclose the plaintiff from re-filing, whether the defendant attempted to evade service, and any other relevant equitable considerations." *Id.* (citing *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995) ("The Advisory

*Thomas v. Bornane*
Civil No. 2013-06
Memorandum Opinion
Page 14

Committee note provides some guidance as to what factors the district court should consider when deciding to exercise its discretion to extend time for service . . . [a]lthough the list is not exhaustive, the Committee explained that '[r]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.' "). The Third Circuit noted that the failure to serve the defendants was attributable to "both Mathies and his attorney . . . ." *Id.* The court further noted that this had the effect of tolling the statute of limitations "for six years." *Id.* Thus, the Third Circuit ultimately agreed with the district court that

> it would be unfair to impose upon Dr. Silver further delays so that Mathies could complete service, as well as the burden of defending a claim that Mathies did not bring to Silver's attention until—accepting arguendo Mathies' position that his claim accrued in April 2003—seven years after the statute of limitations began to run.

*Id.* Accordingly, the Third Circuit concluded that the district court did not abuse its discretion in holding "that fairness to the defendant in this case outweighed Mathies' interest in continuing the litigation." *Id.* at 221.

In determining whether the time period for effecting service should be extended, the Court will apply the *Mathies* factors as outlined above. First, Thomas and Bryan's initial

attempts at service were not entirely reasonable. Although they
made an effort to serve Bonanno in a timely manner, the form of
that service was insufficient under Rule 4(e). Rule 4(e) simply
does not countenance service on an individual by mail, or by
leaving process on a doorstep. The touchstone of service on an
individual is that it must be effected on some person--be it the
defendant himself, someone at the defendant's residence, or the
defendant's agent. Thomas's and Bryan's failure to effect
service on Bonanno in compliance with Rule 4(e) counsels in
favor of dismissal.

Although Thomas's and Bryan's attempts at service were
unreasonable, Bonanno has not identified any prejudice that
might have arisen from the delay. This action was commenced not
quite six months ago. Moreover, it is clear from his filings
that Bonanno has since received notice of Thomas's and Bryan's
claims. The lack of any identifiable prejudice thus counsels
against dismissal.

Thomas and Bonanno have not sought an extension of time in
which to effect service. Instead, they maintain that their
previous efforts were sufficient. The third *Mathies* factor thus
counsels in favor of dismissal.

At the same time, Thomas and Bryan seek to undo a land sale
which occurred in 2012. In the Virgin Islands, "actions for the
recovery of real property" are governed by a twenty-year statute

Thomas v. Bonanno
Civil No. 2013-06
Memorandum Opinion
Page 16

of limitations. V.I. CODE ANN. tit. 5, § 31. There is thus no concern that the statute of limitations would prevent Thomas and Bryan from refiling their complaint in the event it was dismissed for want of timely service. *Cf. Petrucelli*, 46 F.3d at 1305 (3d Cir. 1995) (holding that the time period for effecting service may be extended "if the applicable statute of limitations would bar the refiled action . . . ." (internal citation and quotation marks omitted)). This factor is thus neutral.

In sum, the first and third *Mathies* factors counsel in favor of dismissal. However, the prejudice to Bonanno appears to be minimal, at best. Moreover, given the lengthy statute of limitations, Thomas and Bryan could easily refile this action in the event of a dismissal. The Court thus finds that it would not be unfair to Bonanno, given the relatively young stage of this litigation and his current notice of it, to permit Thomas and Bryan some additional time in which to attempt to effect service.

**2.   Service on West Essex and Turn Around**

West Essex and Turn Around also argue that Thomas and Bryan failed to serve them properly.

Federal Rule of Civil Procedure 4(h) ("Rule 4(h)") allows for corporations to be served in the following ways:

>       (A)   in   the   manner   prescribed   by   Rule
>             4(e)(1) for serving an individual; or
>
>       (B)   by delivering a copy of the summons and
>             complaint to an officer, a managing or
>             general   agent,   or   any   other   agent
>             authorized by appointment or by law to
>             receive   service   of   process   and--if   the
>             agent   is   one   authorized   by   statute   and
>             the   statute   so   requires--by   also
>             mailing a copy of each to the defendant

Fed. R. Civ. P. 4(h)(1). As noted above, Virgin Islands law

adopts the Rule 4 requirements for service of process, and also

permits service by publication in certain limited circumstances.

Virgin Islands law does not require service on a registered

corporate agent to be mailed to the defendant in addition to

serving the agent. V.I. CODE ANN. tit. 13, § 51.

### i.   Service on Turn Around

With respect to Turn Around, the return of service includes

an affidavit of the process server, who avers that he personally

served Roxann McMahon, Turn Around's registered agent. A signed

return of service generally serves as *prima facie* evidence

giving rise to a (rebuttable) presumption of valid service. *See*

*Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008);

*Homer v. Jones-Rey*, 415 F.3d 748, 752 (7th Cir. 2005); *see also*

*In re Graves*, 33 F.3d 242, 251 n.16 (3d Cir. 1994) (noting that

the court "give[s] weight to an objective indication that

process has been served"). This presumption may be rebutted,

however, if the defendant produces affidavits or other competent

evidence showing that he was never properly served. *See, e.g.*,
*Blair*, 522 F.3d at 112 (holding that the defendant's affidavits
were sufficient to rebut the *prima facie* presumption created by
a return of service); *Ellibee v. Leonard*, 226 F. App'x 351, 356
(5th Cir. 2007) (holding that the defendants' averments were
sufficient to rebut the information in a signed return of
service.)

Here, Turn Around offers no evidence to rebut the averments
of the process server. Instead, it merely argues that service
was insufficient because Thomas and Bryan first mailed process
to Turn Around's New Jersey office. However, this ignores the
fact that Thomas and Bryan subsequently effected personal
service on Turn Around's registered agent. This is all that is
required under Rule 4(h)(1)(B). Turn Around's agent was served
on March 1, 2013, well within the 120-day time period allowed by
Rule 4(m). Accordingly, Turn Around's motion to dismiss for
insufficient service of process will be denied.

### ii.  West Essex

With respect to West Essex, Thomas's and Bryan's attempts
at service took something of a different tack. The record
reflects that they mailed process to West Essex's New Jersey
Offices, and to West Essex's registered agents. (ECF Nos. 19, 21
44, 45.)

This service does not comport with the requirements of Rule 4(h) or Virgin Islands law. Service on a corporation through its agent can only be achieved by serving the agent personally. *See* Fed. R. Civ. P. 4(h)(1)(B).

As the time-period for effecting service has now expired, the Court must again consider whether Thomas and Bryan should be granted additional time to serve West Essex. As noted above, the Court must consider four factors: In exercising its discretion to extend a service deadline, absent good cause, a court must consider four factors: "(1) the reasonableness of the plaintiff's efforts to effect service; (2) prejudice to the defendant because of untimely service; (3) whether the plaintiff has moved for an enlargement of time; and (4) whether the statute of limitations will bar the plaintiff's claims if the action is dismissed." *Mathies*, 450 F. App'x at 222.

Here, Thomas's and Bryan's attempts at service failed to comply with the unambiguous terms of Rule 4(h). The unreasonableness of their attempts at service are only further highlighted by the fact that they successfully served Turn Around. As with Rule 4(e), Rule 4(h) requires process to be delivered directly to some individual. Thomas and Bryan failed to do so with respect to West Essex. The first factor thus counsels in favor of dismissal.

At the same time, however, the prejudice to West Essex appears to be minimal, at best. West Essex is now aware of the action, which was initiated less than six months ago. This factor thus counsels in favor of denying the motion to dismiss.

Thomas and Bryan never requested any extension of time in which to effect service. Instead, they maintain that their prior efforts were adequate. Having found that their initial attempts at service were insufficient, the Court must conclude that this factor counsels in favor of dismissal.

Lastly, as discussed above, it does not appear that the applicable statute of limitations would bar the refiling of Thomas's and Bryan's claims. This factor is thus neutral.

In sum, the Court is not convinced that, at this juncture, "it would be unfair to impose . . . further delays," *Mathies*, 450 F. App'x at 220, on West Essex by permitting Thomas and Bryan additional time in which to attempt to effect service. Although Thomas's and Bryan's initial attempts at service were unreasonable and they failed to request an extension of time, the prejudice caused by their failure is minimal. As noted above, West Essex has notice of this action and it has been pending for only a relatively brief time. Accordingly, Thomas and Bryan will be granted additional in which to effect service on West Essex.

**3.  Entry of Default against Lieutenant Governor**

The Lieutenant Governor argues that the default entered against him in this matter should be vacated because he was not properly served.

"The court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). Motions to set aside default should be construed liberally, with all doubts resolved in favor of the movant. *Mediniv v. Lederer,* 533 F.2d 891, 894 (3d Cir. 1976). "A default will be set aside if it was not properly entered or if the party seeking default failed to meet a requirement of the rule." *Mettle v. First Union Nat'l Bank*, 279 F. Supp. 2d 598, 601 (D.N.J. 2003) (citing *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 493 (3d Cir. 1993) (where default judgment was vacated for improper service); *Gold Kist, Inc. v. Lauringburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985) (holding that a default judgment should be set aside for improper service). For example, in *Mettle v. First Union Nat'l Bank*, 279 F. Supp. 2d 598 (D.N.J. 2003), the district court set aside the clerk's entry of default when the plaintiff's attempt at service was untimely and he failed to personally serve an officer, manager, or other agent of the defendant corporation, as required by Rule 4(h).

It is well-settled that "a suit against a state official in his or her official capacity is not a suit against the official

but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 689 (1978)) (internal citations omitted). Under Federal Rule of Civil Procedure 4(j)(2), service on a state government or agency may be effected in one of two ways: "(A) by delivering a copy of the summons and of the complaint to [the state's] chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Virgin Islands law does not admit of any means of serving the government except by serving the chief executive officer--that is, the Governor of the Virgin Islands.

Here, the record reflects that Thomas and Bryan served an agent of the Lieutenant Governor. While the Lieutenant Governor is the named defendant, he is being sued in his official capacity and as such, the Virgin Islands is, in effect, being sued. Accordingly, service upon the chief executive officer--in this case, the Governor--is required. The record does not reflect that Thomas and Bryan ever served the Governor of the Virgin Islands. Accordingly, the entry of default must be vacated.

The Court's inquiry cannot end here, however. To date, the Virgin Islands has not been properly served with process in this case. The Court must thus consider whether it would be appropriate to permit Thomas and Bryan another opportunity to attempt to effect service.

In determining whether Thomas and Bryan ought to be allowed additional time to effect service, the Court will consider each of the *Mathies* factors. First, with respect to prejudice the Court cannot conceive of any substantial prejudice that might be brought upon the Lieutenant Governor by extending the period for effecting service of process. The Lieutenant Governor is already aware of the action and the entry of default has been vacated.

Second, Thomas's and Bryan's efforts to effect service were not in full compliance with the Federal Rules, although service was made upon the Lieutenant Governor individually. Although their attempts at service may have sufficed to give the Lieutenant Governor actual notice, as discussed above, notice alone cannot render deficient service sufficient. *See In re City of Phila. Litig.*, 123 F.R.D. 515, 519 (E.D. Pa. 1988). This factor thus counsels in favor of dismissal.

Third, Thomas and Bryan have not requested an extension of time in which to effect service. However, default was entered against the Lieutenant Governor on May 15, 2013--less than 120 days after the filing of the Complaint. The entry of default may

*Thomas v. Bornino*
Civil No. 2013-06
Memorandum Opinion
Page 24

have incorrectly convinced Thomas and Bryan that service on the
Lieutenant Governor was sufficient.

Fourth, as discussed above, the applicable statute of
limitations would not bar the refiling of this claim.

Considering all of the *Mathies* factors together, the Court
finds that none of them counsel strongly in favor of dismissal.
The lack of any identifiable prejudice counsels in favor of
allowing Thomas and Bryan some additional time to effect service
of process.

**B.    Failure to Join an Indispensable Party**

Turn Around further argues that this matter ought to be
dismissed for failure to join all the other individuals with
interests in the Property on the ground that they are
indispensable parties.

"[U]nder Rule 19(a)(2)(ii), a court must decide whether
continuation of the action would expose named parties to the
'substantial risk of incurring double, multiple, or otherwise
inconsistent obligations by reason of the claimed interest.' "
*Gen. Refractories*, 500 F.3d at 317 (quoting Fed. R. Civ. P.
19(a)(2)(ii)). This risk must be greater than the mere
"possibility that a subsequent adjudication may result in a
judgment that is inconsistent as a matter of logic . . . ."
*Field v. Volkswagenwerk AG*, 626 F.2d 293, 298 (3d Cir. 1980).

Thomas v. Bornowne
Civil No. 2013-06
Memorandum Opinion
Page 25

For example, at issue in *Cruz-Gascot v. HIMA-San Pablo Hosp. Bayamon*, 728 F. Supp. 2d 14 (D.P.R. 2010), was whether certain heirs needed to be joined in a medical malpractice case. The plaintiff was one of several heirs of a woman who had mysteriously died while under the care of the defendant hospital. The remaining heirs, who shared the citizenship of the hospital, had initiated a claim in state court. The Court held that Rule 19 required joinder of the remaining heirs, reasoning:

> If the state court allows recovery in the non-diverse heirs' inheritance claim, [the] plaintiff . . . will receive the benefit of damages awarded to [the] estate because she is a member of the sucesion. Similarly, if her federal suit proceeds, [the plaintiff] may receive damages individually for the same harm that the state court already compensated. The defendants would, in both cases, be liable for both judgments.

*Id.* at 29.

Here, although the Court is unaware of any other pending proceeding concerning the Property, the risk of inconsistent judgments is acute. At the time the Property was partitioned, in 1988, there were sixteen individuals with fractional interests. Since then, at least two of these individuals have died, devising their interests to Thomas and Bryan, as well as other, as yet unidentified, heirs. All of these individuals could potentially bring the same claims against Turn Around as Thomas and Bryan now do. If this Court were to deny Thomas's and

Bryan's claims, Turn Around might yet be forced to defend its
title in numerous other actions. Similarly, if this Court were
to award Thomas and Bryan damages for their slander-title claim,
Turn Around might be exposed to redundant liability in similar
actions brought by the co-owners of the Property. Judicial
economy thus counsels in favor of the joinder of all those
having interests in the Property.

Turn Around argues that this matter should be dismissed
because "[i]f any of the parties or potential estates that could
be joined reside in the Virgin Islands, this court cannot
maintain subject matter jurisdiction as complete diversity would
be lost." (Turn Around's Mot. to Dismiss at 12-13.) However,
Turn Around does not identify which, if any, of the parties or
estates which must be joined reside in the Virgin Islands.
Indeed, as noted above, at least two of the original owners of
the Property have since died, and their heirs have not yet been
identified. Moreover, even if such parties were residents of the
Virgin Islands, the Court would be required to determine if
their presence in the litigation was "indispensable" under Rule
19(b) before dismissal could be ordered. Given that the
citizenship and even the identity of all the parties which must
be joined is at this point unclear, dismissal would be
premature.

Thomas v. Bonanno
Civil No. 2013-06
Memorandum Opinion
Page 27

C.  **Failure to State a Claim**

Turn Around further maintains that Count Two of the Complaint should be dismissed for failure to state a claim.

Count Two asserts a claim for slander of title. To make out such a claim, a plaintiff must allege "(1) publication, (2) with malice, (3) of false allegations concerning the plaintiff's property, (4) causing pecuniary harm." *Thompson v. Fla. Wood Treaters, Inc.*, 52 V.I. 986, 1006 (D.V.I. 2009) (citing *Sys. Operations, INc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1140 (3d Cir. 1977)).

In the Complaint, Thomas and Bryan allege "Bonanno, purchaser of [the Property] . . . caused a slander of title, a cloud, to be placed on Plaintiff's [*sic*] title by the premature recording of an assignment from himself . . . to Turn Around . . . ." (Compl. ¶ 23.) Thomas and Bryan have thus alleged the publication of false allegations. However, they have failed to allege that this publication occurred with malice and resulted in pecuniary harm. Thomas and Bryan thus have failed to allege all the essential elements of a claim of slander of title. Their complaint is thus deficiently pleaded.

However, it is well-settled that, when a complaint is "dismissable for lack of factual specificity," a plaintiff nonetheless "should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint . . . ."

*Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (quoting *Darr v. Wolfe*, 767 F.2d 79, 81 (3d Cir. 1985)). The Court must grant leave to amend the complaint regardless of whether the plaintiff has requested it. *See District Council 48 v. Bradley*, 795 F.2d 310, 316 (3d Cir. 1986).

Indeed, the Court may only refuse to grant a plaintiff leave to amend a dismissable complaint only on the grounds of "undue delay, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *see also Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413-14 (3d Cir. 1993). "Futility" in this context "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane*, 213 F.3d at 115 (citing *Burlington*, 114 F.3d at 1434).

Turn Around has adduced no reason for the Court to believe that permitting Thomas and Bryan to amend their complaint would be inequitable or futile. Significantly, Turn Around does not suggest that Thomas's and Bryan's claim for slander of title is barred as a matter of law, but rather that they have failed to set forth their claim with sufficient factual specificity. *See Darr v. Wolfe*, 767 F.2d 79, 81 (3d Cir. 1985) (holding that a curative amendment should be allowed when the complaint is dismissable due to its lack of factual specificity).

*Thomas v. Bonanno*
Civil No. 2013-06
Memorandum Opinion
Page 29

Accordingly, Thomas and Bryan will be given leave to amend their

complaint.

    An appropriate order follows.

                                            S_____
                                              **CURTIS V. GÓMEZ**
                                              **Chief Judge**